**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KIMBERLY LAYNE JOHNSON,** ) | | |
| No. 36126-177, ) | | |
|     Petitioner, ) | | |
| ) | | |
| v. ) | **3:09-CV-0401-D** | |
| ) | **3:07-CR-0012-D** | |
| **UNITED STATES OF AMERICA,** ) | | |
|     Respondent. ) | | |

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge**

Kimberly Layne Johnson ("Petitioner" or "Johnson") brings a motion under 28 U.S.C. § 2255 ("Motion") to challenge his federal conviction and sentence in Cause No. 3:07-CR-012-D. The United States of America ("government") filed a response, and Petitioner filed a reply. Petitioner claims that he received constitutionally ineffective assistance of counsel. The government opposes Petitioner's Motion, contending that Petitioner fails to show deficient conduct or resulting prejudice. This Court held an evidentiary hearing on Petitioner's Motion on December 13, 2010. Mr. Gary Udashen represented Petitioner, and Ms. Aisha Saleem, Assistant United States Attorney, represented Respondent. Dr. Alexandria Doyle, a licensed clinical psychologist, testified, as did Mr. Evan French, a lay opinion witness, and Mr. E.X. Martin, Petitioner's trial counsel. Following the hearing, counsel filed supplemental briefs.

**Factual and Procedural History**

On April 6, 2007, Petitioner pled guilty to one count of receipt of child pornography in violation of 18 U.S.C. § 2252, pursuant to a plea agreement. At the sentencing hearing on July 13, 2007, Petitioner contested application of the five-level enhancement under USSG § 2G2.2 (b) (5) for engaging in a pattern of activity involving the sexual abuse of a minor. (PSR ¶ 46.) Petitioner's

thirteen year old stepdaughter (the "victim"), testified that Petitioner had sexually abused her at least three times when she was five or six years old. The Hon. Sidney A. Fitzwater found the victim's testimony to be credible, adopted the findings in the PSR, and sentenced Petitioner to 210 months imprisonment[1] and a five year term of supervised release. (Sent. Tr. at 74-77.) Petitioner appealed. The Fifth Circuit Court of Appeals dismissed the appeal on Petitioner's motion on March 5, 2008.

## Issues

Petitioner claims that his trial counsel's performance was deficient because he did not present two witnesses at Petitioner's sentencing hearing to offer opinion evidence that Petitioner did not sexually abuse his stepdaughter. Additionally, Petitioner claims counsel provided deficient performance by failing to interview the two witnesses. Petitioner contends counsel's deficiencies prejudiced him because the absence of testimony from these two witnesses deprived Petitioner of a fair sentencing hearing and undermines confidence in the outcome of that hearing. Petitioner claims that there is a reasonable probability that but for defense counsel's ineffective assistance, he would have received a lesser sentence. More specifically, Petitioner states that if the two witnesses

---

[1] Petitioner's base offense level under USSG § 2G2.2 was 22. (PSR ¶ 43.) He received a two-level enhancement under USSG § 2G2.2 (b)(2) because he possessed pornographic images of children under the age of 12. (PSR ¶ 44.) His guideline range was enhanced four-levels under USSG § 2G2.2 (b) (4) because the offense involved material that portrayed sadistic or masochistic conduct. (PSR ¶ 45.) Petitioner received a five-level enhancement under USSG § 2G2.2 (b) (5) because he engaged in a pattern of activity involving the sexual abuse of a minor. (PSR ¶ 46.) He received a two-level enhancement under USSG § 2G2.2 (b)(6) because the offense involved the use of a computer and internet service. (PSR ¶ 47.) Petitioner also received a five-level enhancement under USSG § 2G2.2 (b) (7) (D) because he possessed more than 600 images of child pornography. (PSR ¶ 48.) After a three-level downward adjustment for acceptance of responsibility, Petitioner's total offense level was 37. (PSR ¶ 53.) Petitioner had a criminal history category of I, resulting in an advisory guideline range of 210 to 262 months. The statutory maximum for Petitioner's offense is 240 months. Accordingly, the advisory guideline range became 210-240 months.

had testified, Judge Fitzwater would not have enhanced Petitioner's guideline imprisonment range by 5 points for engaging in a pattern of sexual abuse of a minor, reducing Petitioner's sentencing range to 121-151 months rather than 210-262 months.

The government responds that trial counsel made the strategic decision not to call these witnesses based on his investigation and evaluation of the case. The government contends that Petitioner has failed to show that counsel's performance was deficient and has not demonstrated that he was prejudiced.

## Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. U.S. CONST. art. VI. To merit relief pursuant to § 2255 on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 691. To prevail on the deficiency component of this test, a petitioner must identify the acts or omissions that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. A court need not address both components if the movant makes an insufficient showing on one. *Strickland*, 466 U.S. at 691.

## **Analysis**

Before the sentencing hearing, Petitioner objected to a five-level enhancement for engaging in a pattern of sexual exploitation. (Obj. to PSR.) In support of this objection, trial counsel attached Dr. Alexandria Doyle's Psychological Evaluation Summary (the"report"). The report was an evaluation of Petitioner's functioning and of the victim's statements regarding the alleged sexual abuse attributed to Petitioner. (Report at 2.) Trial counsel noted that the report "questions the validity and accuracy of . . . [victim's] . . . allegations that [Petitioner] had improper and illegal sexual conduct with her. (*Id*. at 2.) In the report, Dr. Doyle recounted a detailed telephone interview with Evan French (the "victim's father") who had no personal knowledge of the facts, but who questioned the validity of the abuse allegation based upon his experiences with his ex wife and his questioning and observation of the victim. (Report at 2-3.) In addition to the telephone interview with the victim's father, Dr. Doyle interviewed Petitioner and administered the Minnesota Multiphasic Personality Inventory-2. She also reviewed a Forensic History Questionnaire. Dr. Doyle, who has expertise in the area of true and false allegations of sexual abuse, concluded that based upon: (1) Petitioner's denial, (2) the skepticism of the victim's father, and (3) clinical studies regarding suggestibility of children, the victim had been influenced by her mother into making up

4

the allegations of sexual abuse. An addendum to the PSR summarized Petitioner's objections and noted that Dr. Doyle's opinion was limited in scope because she never interviewed the victim or the mother. (PSR Add. at 4.)

At sentencing, the victim testified to Petitioner's sexual exploitation of her when she was five or six years old. Petitioner also testified, denying that he had sexually exploited his stepdaughter. Donna King, Petitioner's half-sister testified that she and her family did not believe the victim's testimony and did not believe Petitioner had harmed his step-daughter. (*Id*. at 59.) Petitioner's brother also testified, giving the same opinion. (*Id*. at 61.) After thoroughly considering all of the evidence before him, Judge Fitzwater was convinced that the victim was telling the truth and that Petitioner lied. (Sent. Tr. at 58.) Judge Fitzwater applied the enhancement to Petitioner's sentence.

**Failure to Investigate and to Present Dr. Doyle and the Victim's Father as Witnesses**

Petitioner contends that his trial counsel provided constitutionally deficient performance by relying at sentencing upon his objections to the PSR and Dr. Doyle's report which, in turn, relied in part upon the victim's father's disbelief of the abuse allegations. Petitioner urges that counsel's failure to interview Dr. Doyle and the victim's father and call them as witnesses at the sentencing hearing was constitutionally deficient performance by which he was prejudice.

Courts must assess the alleged deficiencies from counsel's perspective at the time, not through the prism of hindsight. *Strickland*, 466 U.S. at 689. Petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id*. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir.1981) (quoting *Buckelew v. United States,*

5

575 F.2d 515, 521 (5th Cir.1978)).

At the evidentiary hearing on the § 2255 motion, Petitioner's trial counsel testified that after investigating and evaluating the case, he made the strategic decision to rely upon Dr. Doyle's report rather than calling Dr. Doyle as a witness. Trial counsel took into consideration the fact that the report was admitted without objection. Counsel's strategy was to rely upon Dr. Doyle's report, to present essentially the same information to which she would have testified, and thus, to avoid the risk of impeachment based upon her failure to interview the victim and the victim's mother.

In fact, Dr. Doyle testified that the information she provided at the evidentiary hearing, with some elaboration, is essentially what she provided in her report that was submitted to Judge Fitzwater before the sentencing. (Evid. Hrg. Tr. at 17.) The Court finds that nothing in Dr. Doyle's testimony at the evidentiary hearing was so different from her report or so compelling that it should have been presented at the sentencing hearing, rather than in the report. Given the limited time frame of sentencing hearings and the fact that the trial court needed to hear detailed testimony from both the victim and Petitioner, trial counsel's submission of Dr. Doyle's testimony by report that the trial court could study and consider before the hearing was sound trial strategy and not deficient performance.

Counsel also made the strategic choice to present the testimony of the victim's father through Dr. Doyle's report. The victim's father told Dr. Doyle that he became alarmed that the victim was being dragged into a divorce fight and called Petitioner to warn him of the tactics the victim's mother used during his own divorce from her. (Psych. Eval. Sum. at 3.) During that divorce, sexual activity which was unrelated to the victim in this case also was an issue. (*Id*.) Upon learning that Petitioner had a drinking problem, the victim's father inquired of the victim what the climate of the

home had been and whether anything problematic had occurred with Petitioner or had taken place between her and Petitioner. (*Id*.) The victim's father was concerned about her exposure to conflict directly or indirectly. (*Id*.) He told Dr. Doyle that each time he questioned the victim, she had only positive things to say about Petitioner and his interactions with her. (*Id*.) The victim continually reported that Petitioner was never mean and never hurt her or touched her inappropriately.

With respect to the origin of the child abuse charge, the victim's father reported to Dr. Doyle that the victim did not bring up the allegations against Petitioner. (*Id*. at 4.) Rather, her mother asked the victim if she remembered Petitioner asking her to touch his penis approximately 6 years ago. (*Id*.) She told her mother "no" but upon returning home her mother told her to go to her room and think about it. (*Id*.) Dr. Doyle felt uncertain with respect to whether the victim would have been allowed to leave her room without remembering the allegation. (Id.) The mother then contacted Garland Police who interviewed the victim. (*Id*.)

Dr. Doyle related:

> [The victim's] own father, who is very protective of her and makes an effort to know his daughter, reports that he does not believe the allegation. He is particularly concerned in the changes he is seeing in his daughter as she becomes enmeshed in marital conflicts and he is concerned with the effect such a false allegation can have on [his daughter] who may now see herself as a victim and may be participating in a marked distortion of reality.

(*Id*. at 5.)

Petitioner contends that counsel's failure to call the victim's father as a witness cannot be condoned because it resulted from counsel's lack of preparation. In support of this argument, Petitioner relies on *Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003). In *Wiggins,* the United States Supreme Court held that counsel's failure to reasonably investigate and present mitigating evidence in the sentencing phase of a capital offense case constituted ineffective assistance of counsel.

7

*Wiggins,* 539 U.S. 510, 534 (2003). The Court reaffirmed the holding in *Strickland,* that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins,* 539 U.S. at 521-522 (quoting *Strickland,* 466 U.S. at 690-91). The *Wiggins* Court cautioned that in "assessing counsel's investigation, [the court] must conduct an objective review of [his or her] performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 688-89). In *Wiggins*, the Supreme Court found that counsel's decision not to further investigate defendant's troubled childhood and present such reasonably available mitigating evidence at sentencing fell below "the standard practice in Maryland in capital cases at the time of [defendant's] trial." *Id.* at 524 (referring to the ABA Guidelines for the Appointment of Performance of Counsel in Death Penalty Cases).

Petitioner also relies on *Williams v. Taylor*, 529 U.S. 362, 396 (2000), another death penalty case in which defendants claimed counsel provided ineffective assistance at sentencing because they "failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records." *Id*. If Williams' counsel had conducted the investigation, they would have found voluminous amounts of mitigating evidence. *Id*.

In this case, viewing the challenged conduct as seen from counsel's perspective at the time,

8

counsel's investigation of the victim's father as a witness was not unreasonable. Counsel had Dr. Doyle's interview with the victim's father about his belief that his ex wife manipulated his daughter into adopting false memories about her stepfather. Although counsel did not interview the victim's father, the decision to put his testimony before the Court through Dr. Doyle's report was a considered decision and not simply neglect. The report was admitted without objection, whereas at the sentencing hearing, the victim's father's credibility would have been an issue. Trial counsel knew that the victim's father and Petitioner were friends and that he had testified on Petitioner's behalf before the grand jury that indicted Petitioner in state court for "Indecency With a Child" pursuant to TEX. PENAL CODE ANN. § 21.11(a)(1). Counsel had many conversations with law enforcement, both state and federal, during his pretrial preparation. At the time of the evidentiary hearing on the Motion, he could not identify the individual who had interviewed the victim's father after Petitioner was indicted; however, he clearly remembered that his source told him the victim's father was shocked about Petitioner's guilty plea because it must mean his ex wife was right. Counsel felt it was risky for him to call the victim's father as a witness because he felt from this statement that the father could be "turned around on the stand." Trial counsel felt he could bring out through cross-examination of the victim that her father had confronted her about whether the abuse occurred and she had said, "no." In fact, counsel succeeded in eliciting this testimony from the victim. (Sent. Tr. at 21.) This case is distinguishable from *Wiggins* and *Williams*.

Trial counsel's assessment that the victim's father's credibility was questionable was correct. (Evid. Hrg. Tr. at 43.) The victim's father had no knowledge of the facts, only his personal beliefs based upon his own experiences with his ex wife and daughter. The victim's father believed not only that his ex wife had manipulated his daughter into making the sexual abuse allegations

9

against Petitioner, but also incorrectly believed that his ex wife had planted the child pornography that was initially found on Petitioner's computer. (*Id*. at 41.) Further, as counsel suspected, the victim's father was surprised by Petitioner's guilty plea to the child pornography charge. (*Id*. at 42.)

The victim explained at the sentencing hearing why she did not want to talk to her father about the abuse. She stated that she really did not feel comfortable talking to her father when he kept pressing her about what had happened. (Sent. Tr. at 11.) She testified that when he repeatedly asked her about the abuse, she kept refusing to talk about it, but she finally told him little bits and parts at a time. (*Id*.) As previously stated, Judge Fitzwater found the victim's testimony credible.

After due consideration, this Court finds that trial counsel's investigation was reasonable under the circumstances, and his decision to rely upon his objections to the PSR and the report is not deficient performance based on lack or preparation. Counsel had sufficient information to make a strategic decision about what witnesses to call.

Petitioner also objects that his trial counsel failed to properly emphasize the report and the victim's father's testimony in his objections. The United States Supreme Court's cautions against overly critical review:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133-134 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Burger v. Kemp*, 483 U.S. 776, 789 (1987) (citing *Strickland v. Washington,* 466 U.S. at 689).

This Court has reviewed counsel's objections to the PSR. Dr. Doyle's opinion as a clinical

psychologist and the feelings of the victim's father about his wife's fabrication of the allegations against Petitioner are clearly set forth. Judge Fitzwater took these matters under consideration, but he was persuaded after hearing the testimony of the victim and Petitioner that the sexual abuse was not a false allegation.

## Conclusion

The Court finds that trial counsel's decision to rely upon Dr. Doyle's written report that included her summary of a telephone conversation with the victim's father rather than to call Dr. Doyle and the victim's father as witnesses at the sentencing hearing was a decision well within "the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690. *See also United States ex rel. Walker v. Henderson,* 492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy . . . which courts will practically never second-guess."). Instead of seeking the testimony of these witnesses, the record at trial reflects that trial counsel not only introduced essentially the same testimony through the report but also cross-examined the victim about what she told her father about the incident in question and utilized cross-examination to make his point that she had told her father "no" when he asked her if Petitioner had sexually abused her.

"[C]ounsel's function ... is to make the adversarial testing process work in the particular case." *Strickland,* 466 U.S. at 690. Petitioner has not shown that his trial counsel failed to do so here. Trial counsel's preparation and investigation as well as his strategy to get the testimony of Dr. Doyle and the victim's father before the trial court without subjecting them to cross-examination or without giving the victim's father the opportunity to change his testimony did not deprive Petitioner of a fair trial.

**Recommendation**

The Court recommends that the District Court deny with prejudice Petitioner's § 2255 motion.

SO RECOMMENDED, May 10, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).