IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY LAYNE JOHNSON, | § | |
| | § | |
| Petitioner, | § | Civil Action No. 3:09-CV-0401-D |
| | § | (Criminal No. 3:07-CR-012-D) |
| VS. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

MEMORANDUM OPINION
AND ORDER

Petitioner Kimberly Layne Johnson ("Johnson") was sentenced to 210 months' imprisonment after pleading guilty to a charge of receipt of child pornography.   At sentencing, he received, over his objection, a five-level increase to the advisory guideline range under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse of a minor.  Johnson now petitions for a writ of habeas corpus, contending that his counsel was constitutionally ineffective in his presentation of evidence in support of the objection.  After making an independent review of the pleadings, files, and records in this case; the findings, conclusions, and recommendation of the magistrate judge; and Johnson's objections, the court denies Johnson's petition based on his failure to satisfy the prejudice prong of his ineffective assistance claim.

I

Johnson pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  At sentencing, Johnson objected to the application of a five-level specific offense characteristic under U.S.S.G. § 2G2.2(b)(5) for having engaged in a pattern of activity involving the sexual abuse of a minor.  The presentence report ("PSR") based this specific offense characteristic on Johnson's conduct in which he exploited his stepdaughter, A_____ F_____ ("AF"),[1] by asking her to touch his penis with her hands on several occasions when she was about four or five years old.

In support of his objection, Johnson submitted in advance of the sentencing hearing a Psychological Evaluation Summary ("PES") prepared by Alexandria H. Doyle, Ph.D. ("Dr. Doyle"), a psychologist.  Based, *inter alia*, on an interview of Johnson and a telephonic interview of Evan French ("French"), AF's natural father, Dr. Doyle questioned the "motivations and validity" of AF's allegations against Johnson.  PES 3; *see also id.* at 3-6. At the sentencing hearing, AF, then age 13, testified that Johnson had sexually abused her two or three times when she was five or six years old.  According to AF, Johnson asked her to touch his penis and, not knowing what she was doing, she would play with him.  Johnson also testified at the sentencing hearing, and he denied that he engaged in this conduct.

In ruling on Johnson's objection to the specific offense characteristic under U.S.S.G. § 2G2.2(b)(5), the court considered the PSR, the PSR addendum, the materials submitted in

---

[1]In the PSR, AF is identified as "A_____ Johnson."  PSR ¶ 46.

support of Johnson's objection (including the PES), and the testimony introduced at the sentencing hearing. *See* Sent. Tr. 57 ("The court [based] its ruling on the evidence presented here during [the] evidentiary hearing as well as on the evidence set forth in the [PSR] that the court determine[d] to be reliable in light of the testimony that was presented."). It specifically found AF's testimony "to be credible" and Johnson's testimony "to be a lie." *Id.* at 58. Consequently, the court overruled Johnson's objection and sentenced him based on an advisory guideline range that included the five-level enhancement provided under U.S.S.G. § 2G2.2(b)(5). Johnson appealed his sentence, but he later voluntarily dismissed the appeal.

Johnson then filed the instant habeas petition under 28 U.S.C. § 2255. He maintains that he received ineffective assistance of counsel during sentencing because (1) his counsel failed to call French as a witness at the sentencing hearing; (2) his counsel failed to present a June 1, 2005 police report in which a notation was made that a detective had attempted to contact AF's mother, Laura Johnson ("Laura"), to determine whether AF had been sexually abused by Johnson; (3) his counsel failed to call Dr. Doyle as a witness at the sentencing hearing; and (4) his counsel failed to submit various scientific articles that would have given the court background information on memory tampering and implantation.[2]

---

[2]During the habeas hearing before Judge Stickney, and in subsequent briefing, including in his objections to Judge Stickney's recommendation, Johnson has largely abandoned his arguments regarding the June 1, 2005 police report and the scientific articles on memory tampering and implantation. Accordingly, Johnson has not established that his counsel's failure to submit these additional documents to the court resulted in prejudice during sentencing.

Judge Stickney conducted an evidentiary hearing at which French and Dr. Doyle both testified. Judge Stickney recommends that Johnson's petition be denied on the basis that the performance of Johnson's attorney did not fall below an objective standard of reasonableness. Judge Stickney finds that the decision of Johnson's counsel to rely on Dr. Doyle's PES—which included a summary of her telephone conversation with French—rather than to call Dr. Doyle and French as witnesses at the sentencing hearing was well within the wide range of professionally competent assistance. Johnson objects to Judge Stickney's findings, conclusions, and recommendation. The court has conducted *de novo* review and now denies Johnson's petition.

II

Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, the party seeking relief must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See, e.g., Williams v. Taylor*, 529 U.S. 362,

- 4 -

390-91 (2000).[3]  If the movant fails to satisfy one prong of the test, the court need not consider the other prong.  *See, e.g., United States v. Webster*, 392 F.3d 787, 794 & n. 12 (5th Cir. 2004).

To prove prejudice, a movant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  In the context of sentencing, the movant must demonstrate a reasonable probability that, but for his counsel's errors, he would have received a lesser sentence.  *See, e.g., United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

III

Johnson has failed to establish actual prejudice from his counsel's failure to call French as a witness at the sentencing hearing.

A

Johnson argues that, had the court heard at sentencing the testimony that French gave at the habeas evidentiary hearing, the testimony would have "completely change[d] the conclusions reached by [the court]."  Objs. 2.  According to Johnson, French's testimony

---

[3]The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*. at 689.

would have established that AF had no actual memory of the alleged incidents involving Johnson and that she was simply repeating what her mother had convinced her had occurred. Johnson maintains that French would have testified that he did not believe the alleged incidents had occurred. Thus instead of weighing AF's credibility against Johnson's, the court would have weighed AF's testimony against her father's testimony, and, as a result, the outcome would have been different.

During the habeas evidentiary hearing, French testified in detail about his discussions with AF concerning her accusations against Johnson and the reasons French believed the accusations were false. He testified that, when he called AF on her twelfth birthday, her mother (Laura) informed him, "'[w]ell, [AF] told the police today that—,' back so many years ago, she couldn't remember exactly when, when they lived on River Cove, that [Johnson] asked [AF] to touch his thingy back when [Laura] was in grad school." Hab. Tr. 27. According to French, this information came as a surprise to him because, when he had previously asked AF "what is this counseling about [Johnson]," and "[h]as [Johnson] ever been mean to you, or hit you, or touched you, or called you bad names," AF always said "no," and said, "[n]o, Layne's fine." *Id*. at 28.[4] Because of the nature of AF's accusations

_____

[4]French's questioning of AF was conducted in the context of his trying to determine why she had recently started attending counseling. French testified that he received a call from Laura that she was leaving Johnson because he had a drinking problem and that AF was going to start counseling. When French asked Laura the cause for the counseling, Laura responded it was "just some Layne stuff." Hab. Tr. 28. French's questioning of AF was thus essentially aimed at finding out what the "Layne stuff" was. Consistent with that purpose, he asked AF whether Johnson had been "mean" because according to French, Laura had insinuated that Johnson had "been mean to [AF]." *Id.*

and the fact that AF was planning to visit French in a few weeks, French did not discuss the

accusations with AF over the telephone that day.

When French did ask AF about the accusations, she told him:

> Me and mom had been out shopping and on the way home she
> asked me, "[AF], do you remember that time you told me that
> [Johnson] had asked you to touch his thingy" and she said no,
> and [her mom said] "[w]ell when we get home I want you to go
> spend some time by yourself, seeing if you can remember when
> that happened."

*Id.* at 29-30 (some quotation marks omitted).  After about 1½ hours of talking with AF about

the incident, French asked her, "do you understand the seriousness of what you're saying?

. . . [b]ecause [Johnson] could get into really big trouble."  *Id.* at 30.  AF replied, "[w]ell, I

think it happened," and French thought this answer was "kind of very loose."  *Id.*  Based on

his discussion with AF, French "just felt like [the alleged abuse] didn't happen."  *Id.* at 31.

French also testified that his knowledge of the type of person Laura is played a large

role in his belief that AF's accusations were false.  According to French, during his divorce

from Laura, she had "tried to play dirty," warning him, "well, you know, I'm going to have

to mud sling if I'm going to win this thing."  *Id.* at 31-32.  French testified that Laura had

made false accusations against him and that, "based upon [his] knowledge of Laura . . . [she

was] the type of person that would make up an accusation like [the one against Johnson] to

gain something she's trying to get."  *Id.* at 32.  French also testified that AF was willing to

"do and say whatever her mother told her to do and say."  *Id.*  Finally, French testified that

he did not believe AF's accusations because he knew that Laura would not allow AF to live

with someone who had sexually abused her.   During cross-examination, French acknowledged that he knew Johnson had pleaded guilty to possession of child pornography, knew that Johnson had placed a video camera in AF's room, and was aware of an allegation that Johnson had peeped in on AF in the bathroom.  French maintained, however, that none of these factors caused him to change his belief that AF's accusations against Johnson were false.

B

To determine whether Johnson was actually prejudiced by his counsel's failure to call French to testify at sentencing, the court considers whether "the result of the proceeding would have been different" had French testified.  *See Strickland*, 466 U.S. at 694.

1

The underlying facts to which French would have testified at sentencing are largely the same as were presented to the court in the PES.  Based on a telephone interview of French, Dr. Doyle stated in the PES that (1) Laura told French during their divorce "I am going to start mudslinging to win this thing" and raised false allegations against French, PES 1; (2) before AF reported Johnson's sexual abuse, French questioned AF about whether "anything problematic had occurred with Layne or had taken place between her and [Johnson]" and "[AF] had only positive things to say about [Johnson] and his interactions with her [and] [Johnson] was never mean, hurt or touched her inappropriately," *id*. at 2; and (3) AF told French that "while driving with her mother, [she was] asked if she remembered [Johnson's] asking her to touch his penis approximately 6 years ago.  [AF] represented that

- 8 -

she told her mother 'no' but that upon returning home she was told by Laura to go into her room and 'think' about it," *id*.  Although Johnson correctly notes that French's testimony was not presented at sentencing, most of the underlying facts to which French would have testified were before the court.[5]  Had French testified at sentencing to the same matters that were included in the PES, his testimony would have been cumulative of what was already before the court.  Because Johnson has not established that French's testimony on the foregoing matters would have added anything "new" to what Dr. Doyle had already included in the PES, or that his testimony would have presented materially different evidence from what was contained in the PES, Johnson cannot establish that French's testimony would have resulted in a lesser sentence had it been presented.

### 2

To the extent that French's testimony would have added details to the evidence presented at sentencing, Johnson has likewise failed to establish that he would have received a lesser sentence.

He has failed to show that, had French testified that AF did not tell him about the

---

[5]In fact, AF was questioned about, and testified regarding, each of these alleged facts. When asked why she had told her father (French) "that nothing happened, meaning nothing inappropriate happened between [her] and Mr. Johnson," AF responded that she had "told him no because [she] didn't feel comfortable telling him what [Johnson] did."  Sent. Tr. 20. AF also testified that she told French that Johnson had not touched her because "in fact, Layne Johnson [had not] ever touch[ed her] inappropriately."  *Id*. at 21.  AF stated that she did not remember her mother's telling her to go to her room to think about whether she remembered the encounters with Johnson.  AF also testified that she had not at any time felt any pressure from an adult to tell a certain version of what had happened.

alleged abuse when he questioned her regarding the "Layne stuff," Hab. Tr. 28, the court

would not have applied the specific offense characteristic under U.S.S.G. § 2G2.2(b)(5).

First, French did not ask questions of AF in a way that would necessarily have prompted her

to disclose Johnson's exploitive conduct.  According to French, he asked AF whether

Johnson had ever been "mean" to her and whether he had touched her.  *Id*.  AF's response

was not inconsistent with her testimony at sentencing.  According to AF, Johnson had not

been "mean" to her.  *See* Sent. Tr. 21.  Rather, Johnson had asked AF to touch him in a way

that she did not understand at the time (i.e., at age five or six) was inappropriate.

Second, AF testified that she had not told French about Johnson's conduct because

she "didn't feel comfortable telling him what [Johnson] did."  *Id.* at 20.  The fact that AF,

who was at the time a preteen girl, felt uncomfortable discussing such sexual matters with

her natural father is reasonable and would not raise serious doubts about her credibility.

Moreover, in her testimony, AF was able to provide intimate details, and she acknowledged

when she did not remember something, even when claiming to recall might have

strengthened her account of Johnson's exploitive conduct.  *E.g. id.* at 8 (AF did not

remember the shower incident), and 7 (AF did remember details of interaction with Johnson).

In any event, during sentencing, there was already evidence that AF had not told her father

about the abuse, and this issue was thoroughly explored.

Johnson has also failed to show that French's testimony that AF told him that she

initially informed her mother that she did not remember the incidents, and that her mother

had sent her to her room to "remember when that happened," Hab. Tr. 30, would have

established that AF did not actually recall such an event. AF testified at sentencing that, on the way to talk to a Garland Police Department detective who was investigating Johnson, her "mom had asked [her] in the car . . . do you remember telling [your aunt] Donna this." Sent. Tr. 10. AF responded, "yeah, somewhat." *Id*. AF also testified that she actually remembered touching Johnson, although she later acknowledged in response to the court's questions that her recollection was "a little fuzzy." *Id*. at 27. AF testified that when she was five or six years old, Johnson asked her two or three times to play with his "weenie," and she did. *Id*. at 6-7. AF was able to testify specifically about regarding where she and Johnson were located on each occasion, what they were wearing, and what Johnson said to her. At sentencing, the court had already read Dr. Doyle's report, which reported French's account of AF's initial inability to remember the incidents until Laura sent her to her room to remember when that happened; the court still concluded that AF was telling the truth.[6] Johnson has failed to establish that French's testimony at sentencing on this same subject would have changed the court's finding that AF was a credible witness and that Johnson "did engage in conduct in which he exploited [AF] on two or more separate instances." *Id.* at 58.

Johnson has also failed to establish that French's testimony that, after 1½ hours of discussion, during which he explained to AF how serious her allegations were, and AF responded, "[w]ell I think it happened," Hab. Tr. 30, would have led the court to find that AF

---

[6]In fact, the PES is even more critical than is French's testimony. The PES emphasizes the fact that AF was told to "[go] to [her] room," and it speculates that AF might have been forced to remain there until she convinced herself of the abuse. *See* PES 4.

had no actual recollection of the abuse.  First, French's testimony at most shows that AF did not change her story despite a lengthy discussion during which French emphasized that Johnson could get into "big trouble" and that the allegations were serious.[7]  *Id.*

Second, the court already had before it at sentencing AF's acknowledgment that her recollection of Johnson's conduct was "a little fuzzy."  Sent. Tr. 27.  Despite AF's concession regarding the limitations of her memory, the court nonetheless found her testimony to be credible.

Third, there was evidence in the sentencing record that Johnson had engaged in other conduct that was fully consistent with the type of exploitive conduct of which AF had accused Johnson.  There was evidence that Johnson had tried to observe AF when she was taking a shower and that he had placed a camera in AF's room and concocted a phony explanation for why he had done so.[8]  Johnson possessed a large number of child pornography images, including images of prepubescent children and of children engaged in sexual intercourse and deviant sexual intercourse with other children and with adults.  This conduct is consistent with the actions of someone who would seek sexual gratification by engaging in exploitive conduct with an innocent young girl.  Johnson has not established that, had French testified at sentencing that AF told him, following a lengthy discussion, that she

---

[7]French's habeas evidentiary hearing testimony varied from his affidavit, in which he recalled that AF looked angry, glared, and told him, "Well I am pretty sure it happened." French Aff. 2.

[8]Although Laura is the source of some of this information, French acknowledged this evidence at the habeas evidentiary hearing.

"[thought] it happened," Hab. Tr. 30, this would have led the court to find that Johnson did not engage in the exploitive conduct in question.

Johnson has also failed to establish that French's testimony regarding how Laura acted during their divorce, and regarding Laura's possible motivation for coercing AF to lie about Johnson, would have resulted in a lesser sentence. French testified that, in order to "take care of" the parent AF was living with at the time, she had a tendency to do what that parent said to do. *Id.* at 33. But on the date of the sentencing hearing, AF was living with French and his wife, not with Laura. And Laura had already divorced Johnson and thus did not have the same motive (e.g., to win in a custody battle) that she might have had were divorce proceedings still pending. Moreover, AF specifically addressed this concern by testifying at sentencing that she felt no pressure to tell the story differently.

French also testified that Laura would not have knowingly remained with an abuser. French appears to have concluded that Laura would not have stayed with Johnson had she thought Johnson had sexually abused AF. French alleges that he confronted Laura about why she had left AF in Johnson's care if she thought Johnson had abused AF, and Laura responded that she was "scared." *Id.* at 37.[9] Because AF did not remember telling her mother about the abuse until recently, and because Laura did not testify at sentencing, the only evidence that Laura knew about the events before the separation or the camera incident came

---

[9]This testimony differs from the PES, which states that French "reports that . . . he questioned why then [Laura] made no effort to limit [Johnson's] access to [AF] and had him care for [AF] for the many hours that she pursued her master's degree at a university . . . [and] her reply was that she had 'made a bad parenting decision.'" PES 5.

from French.

But even if French's testimony would have established that Laura was actually aware, five to six years earlier, of AF's allegations, Johnson has not demonstrated that this fact would have changed the outcome of his sentencing. Assuming that Laura in fact knew about AF's allegations five to six years earlier, it is possible that Laura was in fact scared, or that she decided to stay with Johnson despite AF's accusations. In any event, Johnson has failed to demonstrate a reasonable probability that, had French testified that Laura did not actually believe the abuse occurred, the court would have reached a different conclusion regarding the testimony of AF and Johnson. Moreover, as with most of French's other testimony, his opinion that Laura would not have stayed with a known abuser was already before the court during sentencing via the PES.

Johnson has failed to establish a reasonable probability that, but for his counsel's failure to call French to testify at the sentencing hearing, he would have received a lesser sentence. *Strickland*, 466 U.S. at 694; *Grammas*, 376 F.3d at 438. For the most part, French's testimony is not new and does not add to the evidence that was already before the court through the PES. In fact, French testified at the habeas evidentiary hearing that the information he was testifying about was "basically the same information that [he] provided to the psychiatrist, Dr. Doyle." Hab. Tr. 44. To the extent French's testimony was actually "new," Johnson has failed to demonstrate that it would have made a difference in the outcome. Accordingly, Johnson is not entitled to relief based on his counsel's failure to call French as a witness at sentencing because he has failed to demonstrate actual prejudice.

IV

Johnson has also failed to establish actual prejudice from his counsel's failure to call Dr. Doyle as a witness at sentencing.

A

Johnson argues that Dr. Doyle's testimony would not only have bolstered French's testimony; it would also have provided a scientific rationale for why AF would believe the alleged abuse actually happened when, in fact, it did not.

At the habeas evidentiary hearing, Dr. Doyle testified generally that allegations of child sexual abuse are more likely to be false if they arise in the context of divorce because there is often pressure on the child to conform to what the parents want. She estimated that about 15% of sexual abuse allegations that arise in the context of divorce are false. Dr. Doyle explained that false implantation of memory is possible even among adults, but that the problem is more acute for children because their memories and cognitive capacities are more fluid. She concluded, based on the assumption that Laura initially said "[d]o you remember being sexually abused," that Laura had suggested to AF that there was sexual abuse in the first place, which was a factor likely to create a memory that did not exist. Hab. Tr. 9. She next explained that a child's first impression is likely to be the most accurate, and concluded, based on the assumption that AF initially said "no" to the question of abuse, and then was told by her mother to go to her room and think about it, that AF was "essentially punished" for not getting the right answer and then became confused about whether the abuse had happened. *Id*. at 12. Dr. Doyle opined that it was "well documented" that AF's mother

- 15 -

is willing to ruin her children's view of her parent to serve her own divorce needs, although Dr. Doyle also acknowledged that she knew nothing about the events other than her conversations with French. *Id.* Dr. Doyle stated that therapy can entrench a view of abuse and further undermine a child's credibility. Dr. Doyle generally testified that children have a very difficult time remembering things over a five-year period.

B

Having reviewed Dr. Doyle's evidentiary hearing testimony, the court holds that Johnson has failed to show that this testimony adds anything new to the sentencing record. At the habeas evidentiary hearing, Dr. Doyle testified generally about factors that make a child's recollection of abuse in the context of divorce more unreliable, and she addressed specifically why she believed AF's recollection of abuse was unreliable. Her conclusions, however, had already been clearly articulated at the time of the sentencing hearing in the PES.

In the PES, Dr. Doyle pointed out that the sexual abuse allegation against Johnson, like the allegations of abuse against French, came amid divorce proceedings in which child custody was an issue.[10]  She concluded that "[t]he interview of [AF] by Laura, if accurately reported, involved actions that are well known to promote false allegations." PES 4. Dr. Doyle opined that "young children" are especially at risk for false implantation of memories.

---

[10]At the time the PES was written (October 2005), Johnson and Laura were going through a divorce in which access to Johnson's natural daughter, H___, was at issue. PES 2.

*Id.* She pointed out that if AF, after stating that she did not recall the abuse, was told to go to her room to think about whether the abuse had happened, AF might have felt she was being punished by her mother for initially giving an undesirable answer. Further, based on French's version of the events, Dr. Doyle surmised that AF was "virtually bribed with the opportunity to leave her room if she would make a disclosure." *Id.* Dr. Doyle concluded in the PES that, at the time of her interview by the police, "[AF] [was] likely to have been offering highly contaminated information, not only from the inappropriate discussion with Laura about 'remembering' abuse but from the multiple opportunities [including during therapy] to entrench a false allegation." *Id.* at 5.

The PES therefore fully presented the same opinions that Dr. Doyle would have expressed had she testified at sentencing. In fact, the court explicitly addressed the types of concerns that Dr. Doyle raised in the PES by questioning AF about whether she felt pressured to testify a certain way and whether she had an actual memory of the events about which she had testified. The government also elicited testimony from AF regarding how she came to remember the events, and she explained that a separate incident—involving the video camera—had triggered her earlier memory and had helped her realize that Johnson's earlier conduct was inappropriate. Moreover, even had the court accepted Dr. Doyle's opinions at a general level, her specific conclusions about AF were based only on interviews of Johnson and French, not of Laura or AF. And Johnson has failed to show that Dr. Doyle's testimony would have changed the court's finding that AF was testifying truthfully at the sentencing hearing, that she had an actual recollection of the sexual abuse by Johnson, and

that she did not feel pressured to testify a certain way.

Accordingly, Johnson is not entitled to relief based on his counsel's failure to call Dr. Doyle as a witness at sentencing, because he has failed to demonstrate actual prejudice.

V

Considering the record in this case and pursuant to Fed. R. App. P. 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the court denies a certificate of appealability. For the reasons explained in this memorandum opinion and order, the court finds that petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If petitioner files a notice of appeal,

( )     petitioner may proceed *in forma pauperis* on appeal.

(**X**)     petitioner must pay the $455.00 appellate filing fee or submit a motion to proceed *in forma pauperis*.

\*     \*     \*

The court adopts the recommendation of the magistrate judge that Johnson's motion for relief under 28 U.S.C. § 2255 be denied, although the court does so on the ground that Johnson has failed to establish that the outcome of his sentencing hearing would have been

different and has therefore failed to demonstrate actual prejudice.

**SO ORDERED**.

November 30, 2011.

SIDNEY A. FITZWATER
CHIEF JUDGE